**IN THE UNITED STATES DISRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN a/s/o Barry Gregory and FARMERS NEW CENTURY INSURANCE COMPANY a/s/o SETH GREGORY,<br><br>       Plaintiffs,<br><br>          v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG ELECTRONICS CO., LTD.,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>**)** |

## COMPLAINT

NOW COME the Plaintiffs, FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN a/s/o Barry Gregory and FARMERS NEW CENTURY INSURANCE COMPANY a/s/o SETH GREGORY, by and through its attorneys, Thompson Brody & Kaplan, LLP, for its Complaint against the Defendants, and hereby states as follows:

## PARTIES

1. At all times relevant, the Insured, Barry Gregory, was the owner and landlord for the property located at 631 Sheridan Drive in Loves Park, Illinois 61111 ("subject property").

2. At all times relevant, the Insured, Seth Gregory, was the grandson and tenant of Barry Gregory, and Seth resided at the subject property with his two (2) cats.

3. At all times relevant, the Plaintiff, FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN ("Foremost"), was an insurance company headquartered in

Michigan, and was licensed to issue property insurance policies to property owners in Illinois, including Barry Gregory.

4.     At all times relevant, the Plaintiff, FARMERS NEW CENTURY INSURANCE COMPANY ("Farmers"), was an insurance company headquartered in California, and was licensed to issue property insurance policies to renters/tenants in Illinois, including Seth Gregory.

5.     At all times relevant, the Insured, Barry Gregory, maintained a property insurance policy with Foremost Insurance (Policy No. 5010247466) that provided coverage to the subject property.

6.     At all times relevant, the Insured, Seth Gregory, maintained a renter's insurance policy with Farmers (Policy No. 0762585445) that provided coverage to the tenant's belongings.

7.     At all times relevant, the Defendant, Samsung Electronics Co., Ltd. ("SECL"), was a South Korean multinational corporation located in Seoul, South Korea. SECL's principal place of business is located at 129, Samsung-Ro, YeongTong-Gu, Suwon-SI, Gyonggi-DO, 443-742, Republic of Korea.

8.     At all times relevant, the Defendant, SECL, was in the business of designing, manufacturing, selling and distributing home appliances throughout the United States and in Illinois.

9.     At all times relevant, the Defendant, SECL, did substantial and continuous business in the United States, imported products to Illinois, made considerable efforts to brand the "Samsung" name in Illinois, earned substantial money from the sale of Samsung products in Illinois, and otherwise conducted substantial business in Illinois.

10.    At all times relevant, SECL's North American Headquarters was located in Ridgefield Park, New Jersey.

2

11. At all times relevant, the Defendant, Samsung Electronics America, Inc. ("SEA"), was a wholly owned subsidiary and alter ego of SECL.

12. At all times relevant, SEA was a New York Corporation with its headquarters and principal place of business located at 85 Challenger Road in Ridgefield Park, New Jersey 07660.

13. At all times relevant, SEA maintained a registered agent within the State of Illinois. SEA's registered agent is CT Corporation System located at 208 S. LaSalle Street, Suite 814 in Chicago, Illinois 60604.

14. At all times relevant, SEA was in the business of designing, manufacturing, selling and distributing home appliances throughout the United States and in Illinois.

15. SECL and SEA (collectively "Defendants" or "Samsung") designed, manufactured, shipped, sold, distributed, marketed and advertised a Samsung electronic stove-top range and oven, model number NE63A8711QN/AA, serial number 0JGU7DCW200015P (the "Stove/Range").

**<u>JURISDICTION AND VENUE</u>**

16. This Court has jurisdiction based on 28 U.S.C. § 1332(a)(1) as this action involves a controversy between citizens of difference states, and the amount in controversy exceeds $75,000.00.

17. Each named Defendant does substantial business in the State of Illinois and has purposefully availed itself of the right and benefits of Illinois. Specifically, the Defendants each sell products in Illinois, including the Stove/Range at issue, distribute products in Illinois, have customers in Illinois, market their products in Illinois, utilize Illinois roadways to distribute their products throughout the country, and otherwise have sufficient minimum contacts with the State of Illinois. Each Defendant also marketed, sold, distributed, and imported the Stove/Range to

Illinois, and undertook substantial efforts to market and build the "Samsung" brand in the State of Illinois.

18. At all times relevant, SEA was the alter ego, assignee, agent, partner, joint venture or employee of SECL.

19. At all times relevant, SEA acted within the course and scope of said relationship, agency, partnership, joint venture or employment, and the actions/inactions alleged herein were authorized, approved or directed by SECL.

20. At all times relevant, SECL is legally and factually responsible for the acts of SEA and is therefore responsible for the damages alleged herein.

21. Each Defendant sold the Stove/Range at issue in this case in Illinois, delivered it into the State, targeted consumers in Illinois, reached out to certain Illinois residents related to the recall of their defective ranges, and otherwise purposefully availed themselves of the rights and privileges of the State of Illinois.

22. Each Defendant derives revenue from selling, distributing, marketing and advertising Samsung products in Illinois.

23. Jurisdiction is also proper based on 28 U.S.C § 1331 as the Plaintiff brings claims under the Magnuson-Moss Warranty Act. The Court may exercise pendent jurisdiction over the non-federal claims included herein.

24. Venue is proper in this district based on 28 U.S.C. § 1391 as events giving rise to Plaintiffs' claims occurred in this judicial district.

25. Each of the Defendants engaged in business activities in Illinois under 735 ILCS 5/2-209, Illinois's long-arm statute.

**FACTS AND ALLEGATIONS COMMON TO
ALL CAUSES OF ACTION**

26.     Prior to March 7th, 2025, the Insureds purchased the subject Samsung Stove/Range for use within the Subject Property.

27.     On or about March 7th, 2025, the subject Samsung Stove/Range inadvertently activated and caused a fire at the subject property.

28.     The fire caused damage to the subject property owned by Barry Gregory as well as contents/personal property owned by the Tenant, Seth Gregory.

29.     It is well known that this type of Stove/Range was defective and prone to inadvertent activation by accidental contact by humans or pets.

30.     The fire at the subject property was caused by the Stove/Range's inadvertent activation, which ignited nearby combustibles near the burner.

31.     Prior to the fire, the Tenant, Seth Gregory, left the subject property around 9:00 p.m.

32.     At around 1:00 a.m. on March 7th, 2026, video footage of the subject property shows movement in the kitchen at/near the Stove/Range.

33.     At around 5:00 a.m. on March 7th, 2026, video footage shows smoke becoming visible within the kitchen of the subject property.

34.     At around 6:00 a.m., the Loves Park Fire Department arrives to extinguish the fire.

35.     At all times relevant, the Tenant's two (2) cats resided at the home.

36.     At all times relevant, the two (2) cats were capable of making contact with the knobs of the Stove/Range.

37.     At the time of the fire first ignited, Seth Gregory was not at the subject property.

38.     Upon information and belief, no one intentionally used the Stove/Range on the day of the Fire.

5

39. Due to the Stove/Range's clearly defective design and manufacturing, even the slightest contact with the knobs (here by the Tenant's cats), caused the stove to turn on and resulted in a fire.

40. As a result of the inadvertent activation, the Stove/Range top began heating-up and ignited nearby combustibles, causing significant amounts of fire and smoke damage throughout the subject property.

41. Upon information and belief, the Loves Park Fire Department concluded that the fire started at the Stove/Range.

42. There is no dispute that the Stove/Range was unreasonably dangerous and defective when it left the possession and control of the Defendants and at the time it was sold. These defects and unreasonably dangerous conditions include, but are not limited to:

    a. The knobs lacked sufficient two-factor mechanisms to active the stove burners, as required by the applicable industry standards;

    b. The knobs were improperly and defectively placed at the front of the Stove/Range, where they are likely to be bumped, particularly when they lack sufficient guards that would prohibit humans or pets from bumping them;

    c. The Stove/Range, and hundreds of thousands like it, are defectively manufactured and not properly tested as they come off the assembly line in China or elsewhere in Asia, leading to knobs with inconsistent performance and force requirements to push and/or turn; and

    d. The Defendants fail to provide sufficient warnings to consumers that the Stove/Range can be turned on simply by brushing up against the knobs, fails to warn consumers that further safety devices are needed to ensure the knobs aren't inadvertently turned on (by pets or humans), and is otherwise defective in the warnings provided to consumers.

43. The defects within the Stove/Range made it prone to inadvertent activation by people and/or pets, like what occurred and led to the fire described above.

44. Upon information and belief, the defective design and manufacturing of these Samsung Stoves have caused hundreds of fires, leading Samsung to recall over 1 million Stoves/Ranges.

45. On August 8th, 2024, the Consumer Product Safety Commission ("CPSC") recalled the subject Stove/Range (model number NE63A8711QN/AA) and several other models of Samsung ranges (CSPC Recall No. 24-335).

46. The Recall notice states, "Front-mounted knobs on the ranges can be activated by accidental contact by humans or pets, posing a fire hazard." Samsung Recalls Slide-In Electric Ranges Due to Fire Hazard, CONSUMER PROD. SAFETY COMM'N (Aug. 8, 2024), www.cpsc.gov/Recalls/2024/Samsung-Recalls-Slide-In-Electric-Ranges-Due-to-Fire-Hazard.

47. The Stove/Range's multiple defects created a significant fire hazard that makes it unreasonably dangerous for normal and expected use by the consumer.

48. At all times relevant, Barry Gregory and his Tenant, Seth Gregory, used the Stove/Range in a reasonably foreseeable manner.

49. As a result of the inadvertent activation and fire, Barry Gregory submitted a claim to the Plaintiff (Claim No. 7008731173), and requested payment for the damages.

50. As a result of the inadvertent activation and fire, Seth Gregory submitted a claim to the Plaintiff (Claim No. 5035509049), and requested payment for the damages

51. Pursuant to the policy, Foremost thereby became obligated to pay and did pay for the damages incurred by Barry Gregory as a result of the fire in the amount of $284,959.83.

52. Pursuant to the policy, Farmers thereby became obligated to pay and did pay for the damages incurred by Seth Gregory as a result of the fire in the amount of $12,000.00.

53.     The Plaintiffs have thereby became subrogated, through its payments, to the rights of Barry Gregory and Seth Gregory's claims to the extent of the payments made.

### COUNT I – NELIGENCE – PRODUCTS LIABILITY

54.     The Plaintiff hereby restates and realleges Paragraphs 1-53 above as Paragraph 54 of Count I, as fully set forth herein.

55.     At all times relevant, the Defendants were in the business of designing, manufacturing, shipping, selling, distributing, marketing and advertising kitchen appliances, including Stoves/Ranges, like the one at issue in this litigation.

56.     The Defendants designed and manufactured the Stove/Range (Model No. NE63A8711QN/AA) that was purchased by the Gregorys and installed within the subject property.

57.     The Defendants are considered manufacturers under Illinois law and are therefore strictly liable for the claims alleged herein.

58.     The Defendants designed, assembled, manufactured, distributed, and sold the Stove/Range to the ultimate and foreseeable consumers, including Barry Gregory, as the property owner, and Seth Gregory, as the resident at the subject property.

59.     As such, the Defendants should have reasonably foreseen that the Plaintiffs and their Insureds would be subject to any harm caused by an unreasonably dangerous and defective Stove/Range when used in a reasonably foreseeable way.

60.     After its purchase, the Stove/Range reached Seth Gregory without substantial change and in the exact same condition in which it was sold.

61.     Pursuant to Illinois law, the Defendants owed a duty to Barry Gregory, as the property owner, and Seth Gregory, as the resident at the subject property, and to the Plaintiffs to

design, manufacture, assemble, distribute, sell, market, advertise, package and label the Stove/Range free from all defects and unreasonably dangerous conditions.

62. The Defendants breached their duty by failing to exercise reasonable care in the design, manufacturing, assembling, distributing, selling, marketing, advertising, packaging and labeling of the Stove/Range as it was unreasonably dangerous when it left the possession and control of the Defendants and at the time the Stove/Range was sold to the Gregorys because:

a. The design and manufacturing of the Stove/Range allowed for inadvertent activation by minor accidental contact from humans or pets;

b. The Stove/Range lacked adequate safety features or safeguards to prevent it from inadvertently activating and causing the subject Fire at the subject property;

c. The Defendants failed to properly inspect and test the Stove/Range to ensure it was free of any defects that would cause fires and ensure that safety mechanisms were functioning properly to protect against fire hazards;

d. The Stove/Range's knobs were designed and manufactured with a low detent force that was inadequate and would allow for the knobs to easily be turned into the "on" position, which presented a substantial fire hazard;

e. The Stove/Range was designed with control knobs purposefully, defectively, intended to make them stick out, a design decision that violates the design safety hierarchy and places marketing over safety;

f. The Stove/Range deviated from its intended design and/or Defendant's performance standards at the time it left Defendant's control and reached Seth Gregory due to improper manufacturing and lack of proper resistance to prevent inadvertent activation;

g. The Stove/Range failed to adhere to minimum industry safety standards that require a two-step activation process, including (1) a minimum sufficient "inward" force that then allows (2) a minimum sufficient rotational force to turn the burner control knob into the "on" position, and other basic industry standards, including but not limited to the Underwriters Laboratories ("UL") minimum industry standard;

9

h. The Stove/Range was otherwise manufactured in such a manner as to compound the design error by inadvertently activating upon minor, accidental contact from people or pets, in such a way as to be even more prone to inadvertent activation than designed;

i. The Stove/Range was designed and manufactured without the proper warnings to intended users that it posed a substantial fire risk when used by consumers for the intended purpose in a residential setting; and

j. The Stove/Range was otherwise defective and unreasonably dangerous in its design, manufacture, and assembly.

63. As a direct and proximate result of one or more of the breaches and/or design and manufacturing defects above, the Stove/Range was in an unreasonably dangerous condition for its intended and expected use when it was delivered and installed at the subject property.

64. As a direct and proximate result of the Defendants' failure to use alternative designs for the knobs (that would provide the required two-step activation process), the knobs were extremely prone to inadvertent activation.

65. As a direct and proximate result of the unreasonably dangerous condition and defective knobs, the Stove/Range was inadvertently activated by one of Seth Gregory's cats.

66. As a direct and proximate result of the Stove/Range's unreasonably dangerous condition and defective design, the inadvertent activation ignited nearby combustibles and caused the Fire at the subject property.

67. As a direct and proximate result of the Stove/Range's unreasonably dangerous condition and defective design, the subject property and personal property therein sustained significant damages in the amount of at least $284,959.83.

68. Pursuant to its policy of insurance, Foremost paid at least $284,959.83 for the damages sustained by the Barry Gregory as a result of the Fire.

10

69. Pursuant to its policy of insurance, Farmers paid at least $12,000.00 for the damages sustained by Seth Gregory as a result of the Fire.

WHEREFORE, the Plaintiffs, FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN a/s/o Barry Gregory and FARMERS NEW CENTURY INSURANCE COMPANY a/s/o SETH GREGORY, hereby request that this Honorable Court enters Judgment in her favor and against the Defendants, SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG ELECTRONICS CO., LTD., in the amount of at least $296,959.83, and for the costs of this suit and for all other relief that this Court deems necessary and just.

## <u>COUNT II – FAILURE TO WARN</u>

70. The Plaintiff hereby restates and realleges Paragraphs 1-69 above as Paragraph 70 of Count II, as fully set forth herein.

71. In addition to the design and manufacturing, the Defendants undertook a duty to properly package, label and affix the appropriate warnings on the Stove/Range.

72. The Defendants had a duty to provide adequate instructions regarding the safe use of the Stove/Range as well as a duty to provide adequate warnings as to any dangers associated with the Stove/Range.

73. At the time the Stove/Range left the Defendants' possession and control, the Defendants knew or should have known that the Stove/Range would inadvertently activate due to the design of the knobs, and that such inadvertent activation was a fire risk.

74. At the time the Stove/Range left the Defendants' possession and control, the Defendants failed to provide adequate warnings or instructions about the inherently dangerous condition and the susceptibility of the Stove/Range to inadvertently activate and cause a fire.

11

75. The Defendants unequivocally breached these duties when they failed to properly warn consumers, including the Insureds/Subrogees, of the propensity for the defective knobs to inadvertently be moved into the "on" position.

76. Furthermore, the Defendants breached their duty to warn the Insureds/Subrogees in one or more of the following ways:

   a. The Defendants failed to warn consumers, including the Gregorys, that the Stove/Range would inadvertently activate when accidentally bumped or otherwise contacted by a human or pet;

   b. The Defendants failed to warn consumers, including the Gregorys, of the additional safety devices needed to make the Stove/Range safe from inadvertent activation, despite having knowledge of at least 250 reported fires stemming from the Stove/Range being inadvertently activated;

   c. The Defendants failed to warn consumers, including the Gregorys, of the inherently dangerous conditions within the Stove/Range, even when it as being used for the ordinary and/or intended purpose in a residential setting; and/or

   d. The Defendants failed to affix any labels, instructions and/or warnings on the Stove/Range advising the consumer of the potential for inadvertent activations.

77. As a direct and proximate result of the Defendants' inadequate and defective instructions and warnings, the Stove/Range was unreasonably dangerous and posed a severe risk of starting a fire.

78. As a direct and proximate result of the Defendants' inadequate and defective instructions and warnings, the Stove/Range caused the fire at the subject property, which resulted in substantial damage throughout.

79. As a direct and proximate result of the Defendants' inadequate and defective instructions and warnings, the subject property and personal property therein sustained significant damages in the amount of at least $284,959.83.

80. Pursuant to its policy of insurance, Foremost paid at least $284,959.83 for the damages sustained by the Barry Gregory as a result of the Fire.

81. Pursuant to its policy of insurance, Farmers paid at least $12,000.00 for the damages sustained by Seth Gregory as a result of the Fire.

WHEREFORE, the Plaintiffs, FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN a/s/o Barry Gregory and FARMERS NEW CENTURY INSURANCE COMPANY a/s/o SETH GREGORY, hereby request that this Honorable Court enters Judgment in her favor and against the Defendants, SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG ELECTRONICS CO., LTD., in the amount of at least $296,959.83, and for the costs of this suit and for all other relief that this Court deems necessary and just.

**COUNT III – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

82. The Plaintiff hereby restates and realleges Paragraphs 1-81 above as Paragraph 82 of Count III, as fully set forth herein.

83. At all times relevant, the Defendants are "merchants" as it pertains to the Samsung Stoves at issue in the Recall discussed above, which includes the Stove/Range.

84. Prior to March 7th, 2025, the Gregorys purchased the Stove/Range, constituting a sale of the Samsung Stoves, which was ultimately installed within the subject property.

85. Pursuant to 810 ILCS 5/2-314 and the Uniform Commercial Code, once the Stove/Range was sold to the Subrogee/Insured, it was subject to an implied warranty of merchantability.

86. The Defendants could not modify or exclude the implied warranty of merchantability when the Stove/Range was purchased by the Seth Gregory.

87. Pursuant to 810 ILCS 5/2-314 and the Uniform Commercial Code, the Defendants impliedly promised, covenanted, and warranted that the Stove/Range was merchantable, fit for the ordinary purposes for which similar goods are used, and consistent will all applicable minimum industry standards and regulations.

88. At the time the Stove/Range left the Defendants' possession and control, it was defective, inherently dangerous and lacked the requisite warnings/instructions, all of which allowed for the inadvertent and unintentional activation of the Stove/Range.

89. At the time the Stove/Range left the Defendants' possession and control, the knobs on the Stove/Range lacked the required two-step activation process, allowing for the knobs to be turned to the "on" position by minor, accidental contact from humans or pets.

90. As a result of these issues, the Stove/Range was not fit for the ordinary purpose for which similar residential appliances are intended.

91. Despite being used in a reasonably foreseeable manner by the Subrogees/Insureds, the Stove/Range was inadvertently activated and subsequently caused the fire and resulting damages.

92. As a direct and proximate result of the Defendants' breach of the implied warranty of merchantability, the subject property and personal property therein sustained significant damages in the amount of at least $284,959.83.

93. Pursuant to its policy of insurance, Foremost paid at least $284,959.83 for the damages sustained by Barry Gregory as a result of the Fire.

94. Pursuant to its policy of insurance, Farmers paid at least $12,000.00 for the damages sustained by Seth Gregory as a result of the Fire.

14

WHEREFORE, the Plaintiffs, FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN a/s/o Barry Gregory and FARMERS NEW CENTURY INSURANCE COMPANY a/s/o SETH GREGORY, hereby request that this Honorable Court enters Judgment in her favor and against the Defendants, SAMSUNG ELECTRONICS AMERICA, INC.  and SAMSUNG ELECTRONICS CO., LTD., in the amount of at least $296,959.83, and for the costs of this suit and for all other relief that this Court deems necessary and just.

Dated this 21st day of July, 2026.

Respectfully Submitted,

/s/ Bradley M. Hamblock

Bradley M. Hamblock, Esq.
Annah Waldron, Esq.
THOMPSON, BRODY & KAPLAN, LLP
161 N. Clark Street
Suite 3575
Chicago, Illinois 60601
Phone No. (312) 782-9320
E-Mail: hamblock@tbkllp.com
E-Mail: waldron@tbkllp.com